5 How. 148–Followed, 11 How. 106, 108.
Contra, 5 Id. 327.

Van Neste and others agt. Conover.

## SUPREME COURT.

### VAN NESTE AND OTHERS agt. CONOVER.

In an action for the recovery of the possession of personal property, the de-
fendant is liable to be arrested if the property has been removed, concealed or
disposed of so that it can not be found by the sheriff; and it is not necessary,
in order to justify such arrest, to show that such removal, &c. has been done
feloniously fraudulently or in bad faith. It is enough simply to show that it
has been removed, &c. beyond the power of the sheriff to take it (*Code*, §179).

In such case it would seem to be useless for the judge who orders the arrest, to
specify the amount in which the defendant is to be held to bail, for by sec-
tions 187 and 211 of the Code, he can be discharged from arrest only on giving
bail in double the value of the property as fixed by the plaintiff, and that not
for the defendant's appearance in the action merely, but for the return of the
property which may for any cause be awarded against him, and in such case
the bail can not surrender their principal.

Where a quantity of corn was sold on agreement that it should be paid for by
the vendee on delivery; and it took several days to deliver it into the vessel
designated; and upon the delivery of the whole a bill was presented and pay-
ment demanded, which was put off from time to time until the vessel had
sailed. In a suit for the recovery of the possession of the corn, *held*, that
the title did not pass to the vendee absolutely on the delivery.

*New York General Term, May* 1850, *before* EDMONDS, *Pres. J.*
EDWARDS and MITCHELL, *Justices.* The defendant was a dealer in
produce in the city of New York and applied to certain produce
brokers to purchase a quantity of corn for shipment abroad. They
refused to sell to him except for cash, and it was finally agreed to
sell him three boat loads for cash, payable on delivery. The
corn was delivered directly from canal boats on board of a ship
bound for London and was three days in delivery. When the
last was delivered a bill was rendered and the next day, the pay-
ment of the price was called for. Payment was delayed on one
pretence or another, until the ship left the port on her foreign
voyage. In the mean time the defendant continued his business
as usual and made large payments in the course of it; but shortly
after the sailing of the ship, he failed. The brokers acting for
the plaintiffs, as owners of the corn, demanded the corn from the
master of the ship and from the defendant, and not being able to

Van Neste and others agt. Conover.

obtain a return of it, this suit was commenced for the recovery of the possession of it. The sheriff made return to the process, that he had personally served the summons, but was unable to return the corn to the plaintiffs because it had been removed and disposed of, so it could not be taken and returned by him; whereupon the plaintiffs obtained an order for the arrest of the defendant and he was arrested accordingly. The defendant being unable to give the bail required by the statute, applied by motion to the special term to be discharged from the arrest. The motion was denied and an appeal taken to the general term.

S. Jones, *for Defendant*, claimed the defendant's discharge on two grounds: 1. That the corn did not belong to the plaintiffs, but the title had absolutely passed to the defendant by the delivery; and, 2. That in order to justify an arrest it must appear that the property had been removed out of the bailiwick of the sheriff fraudulently, or at least with an intention to place it beyond his reach.

W. C. Noyes, *Contra.*

(There were three suits involving the same question.)

By the Court, Edmonds, *Pres. J.*—In these cases there was a sale of corn for cash, payable on delivery. Several days were employed in the delivery and with the last parcel was delivered to the defendant a bill of the purchase and on the next morning a demand was made of the price.

Under these circumstances there can be no pretence for saying that the sale was absolute and unconditional, and that the delivery transferred the property to the defendant leaving to the plaintiffs only their remedy for the price. The agreement was very precise, that the corn was to be paid for on delivery, and unless so paid for was not to become the property of the defendant. There is nothing to show that this condition was waived. A bill of the goods was presented with the last parcel and payment required without delay, and we can not say that the plaintiffs intended to part with the ownership of their property and to rely only on the defendant's promise to pay. It is manifest that they did not in-

tend to change the ownership until payment was made and that intention was fully carried out by their acts.

The ownership of the property continued in the plaintiffs and they had a right to attempt to recover its possession, as they did in this action. In such case the Code provides that in case they can not recover it, that is, where the property or any part thereof has been concealed, removed or disposed of, so that it can not be found or taken by the sheriff, the defendant may be arrested. The sheriff has made his return to that effect, and it is a conceded fact in the case that the property has been sent abroad so that the sheriff can not deliver it to the plaintiffs. All this is plain enough and presents a case quite distinctly within at least the letter of the statute. But the statute contains an enactment on this subject, so severe in its operations, so unlike all cases of arrest, except for crimes of the deepest dye; so contrary to the whole course of legislation for more than thirty years on the subject of imprisonment for debt, that a doubt has arisen whether it could be possible that the legislature could have intended what their language plainly imports, and whether the court ought not in fact to interpolate the words " fraudulently or feloniously" in the statute to make it consistent with the most palpable requirements of justice.

We confess that if we were passing as legislators on the third paragraph of section 179 of the Code, we should pause a good while before giving our consent to the enactment without the insertion of some words requiring fraud, felony or bad faith to be at least charged, and we are inclined to believe that if the legislature had duly considered the effect of what they were enacting, they would have evinced a like commendable condition of hesitancy. They have, however, passed a law and however we may regret the severity of its character, or however plainly we may perceive that it may become a monstrous engine of oppression, it is our province merely to construe it according to its plain import and to enforce it agreeable to its manifest tenor. To the legislature alone belongs the task of correcting the unjust operation of a plain enactment and judicial legislation, like that

Van Neste and others agt. Conover.

which is now invoked at our hands, must always be mischievous, for the simple reason, if for none other, that the judiciary are not clothed with the power of making all the enactments necessary to enable a statute to operate wisely and well.

In this case the harsh operation of the statute consists in its unusual requirements of bail from the defendant in the action, not for his appearance merely, as in other cases, but for the delivery of the property to the plaintiff, if delivery be adjudged, " and for the payment to him of such sum as may for any cause be recovered against him;" and in the provision that the bail can not in this as in other cases of arrest surrender their principal (*Code,* §§ 179, 187, 188, 211). With this additional feature, that while in other cases of arrest, some supervision over the conduct of the plaintiff in an action is provided, in requiring him first to submit his case to a judge and obtain his sanction to the arrest and the amount in which the defendant is to be held to bail; in this action, the judge has no control over the amount, but it must be in double that value of the property which the plaintiff pleases to put upon it.

It is not difficult to see how cruelly under such a statute, a plaintiff, with the merest pretence of a claim, or even without any may oppress and harrass his victim; and how difficult it will be for the court, in the face of its unequivocal language to afford any protection. But this does not give us the power to alter the law as it is written.

The enactment under consideration is very plain. " The defendant may be arrested as hereinafter prescribed in the following cases": among others " in an action to recover possession of personal property unjustly detained, where the property or any part thereof has been concealed, removed or disposed of so that it can not be found or taken by the sheriff " (*Code,* § 179). There is not a word here about a fraudulent, felonious, or *mala fide* concealment, removal or disposal of the property. It would seem to be enough that there was such concealment &c., even if in the utmost good faith. The omission of fraud in this paragraph is evidently not accidental, for it is carefully used in the preceding

and subsequent paragraphs of that section and as carefully omitted here.   Thus, when one is to be arrested for misapplying property as a public officer, it must be shown to have been fraudulently misapplied, and so when to be arrested for a debt it must have been fraudulently contracted or the debtor's property removed with intent to defraud.

We are not forgetful of an inconsistency to which our attention was called on the argument, namely, that the same statute which requires from a defendant security for double the amount of the claim against him, in cases where the property is beyond the sheriff's power to redeliver, though in perfect good faith requires from a public officer who has fraudulently misapplied public property, or from one who has fraudulently contracted a debt or fraudulently removed his property, merely, security for his appearance, thus inflicting upon misfortune, a greater punishment than upon positive fraud or official misconduct.

But this, while it may excite our surprise at such an unhappy system of legislation so variant from its uniform course for many years, does not in any respect increase our authority to remedy the evil or tend to warrant us in assuming the power of altering the plain language of a statute.

Nor have we overlooked the analogy drawn from the office of the capias in withernam, for which this enactment is intended as a substitute.   That writ was used where the property sought on the plaint in replevin was eloigned and commanded the sheriff to take and deliver to the plaintiff other property of the defendant's equal in value, and it issued on the mere return of the sheriff of elongata to the plaint.   The form of the return was " before the coming of this writ to me, the beasts in this writ specified were eloigned to places to me unknown by the within named, &c., so that I could by no means make replevin of said beasts as within commanded."   The capias in withernam signifies a reciprocal distress in lieu of the first which is eloigned, so that it is distress against distress, one being taken to answer the other by way of reprisal.   Goods were said to be eloigned when they were so disposed of that the sheriff could not get at them to

make replevin, and it was no matter whether the goods were thus placed beyond the sheriff's reach designedly to prevent his executing the process in replevin or in entire good faith, in the honest belief that the eloignor had the right to do so. In either event, the capias in withernam issued. It was in no respect founded upon the inquiry whether the distress had been taken away, with an intention to evade a replevin, but upon the mere return that it was taken away so that the sheriff could not make replevin.

So now, the Code provides that if the property has been concealed, removed or disposed of—not with a fraudulent or felonious intent—not with a design to evade a replevin, but " so that it can not be found or taken by the sheriff," the remedy of arrest may be resorted to. The only difference seems to be in the remedy, namely, an arrest, instead of reciprocal distress, the foundation being intended to be the same in both cases, viz: that the property is so that the sheriff can not make replevin.

We can, therefore, see no reason for requiring from a plaintiff in such an action any thing more, in order to justify an arrest, than the fact which is established in this case, that the property in dispute was removed so that it could not be found or taken by the sheriff and though we may regret the harsh consequences which may follow from the other provisions of the statute, we have no alternative but to affirm the order of the special term, but it must be without costs.

5 How. 153–Not concurred in, 6 How. 11, 12.