### EDWIN R. IVES v. WILLIAM S. HUMPHREYS and others.

Where a vendor voluntarily delivers goods, without any reservation, and designedly leaves them, of his own free will, in the vendee's exclusive possession, for a period of time, he waives simultaneous payment, and the title passes to the vendee, unless such delivery or waiver is procured by fraud.

*It seems*, however, that where the goods sold are of great bulk or large in quantity, so that the delivery is necessarily at different times, or occupies a considerable period in its progress, the vendor would not be bound to insist upon payment before the whole bulk or quantity was delivered or tendered; but that even in such case, if he voluntarily leaves the property in the possession of the vendee after the delivery is complete, the title vests, especially if on requesting payment he is put off, and acquiesces in the postponement.

Where a defendant admits in his answer, his participation in an alleged trespass, and the judge at the trial neglects to instruct the jury that such admission is made, a remark in the charge, that it is for the jury to say how far the testimony proves the defendant guilty, when it appears to the court on review that the evidence does not implicate him at all, is not an error of which the defendant can complain.

Whether or not the rule of pleading be now as formerly, that facts should be alleged " according to their legal effect," it does not follow that when the very facts, and all of them, which it is necessary for the defendant to prove to entitle him to the judgment prayed for, are stated in the complaint and are admitted or proved, the plaintiff may not recover thereon, whether the legal effect of those facts be alleged or not.

In an action for trespass, where the facts are, that two of the defendants actually committed the act, and that a third defendant instigated and employed them to do it, and it is sought to charge the trespass upon all the defendants, *it seems*, that an allegation of the instigation, &c., in reference to the third defendant, is a better compliance with the requirements of the code (§ 142, sub. 2) than an averment of the legal conclusion that he committed the trespass.

Whether, when a defendant, by concealment and misrepresentation, induces a servant to admit him to the plaintiff's house, such admission by the servant is any defence to an action of trespass for entry, &c.; *quere ?*

For an involuntary trespass, or one committed under an honest mistake without intent to injure, the damages should be confined strictly to compensation for the injury sustained by the plaintiff; and in estimating the amount of such damages, all the particulars wherein the plaintiff is aggrieved, may be considered, whether of pecuniary loss, pain, insult or inconvenience.

But unless the trespass is willful, or committed in reckless or wanton disregard of another's rights, or accompanied by circumstances showing malice or a corrupt motive, vindictive or exemplary damages should not be allowed.

THIS action was for an alleged trespass. One of the defendants sold to the plaintiff some furniture. As testified by his clerk, the sale was for cash. There was no evidence, however, that any thing was said by or to the purchaser when the sale was made, about the time or place of payment, nor that any representations were made by him upon the subject. The furniture was delivered at the plaintiff's residence, and at the same time a bill therefor was presented accompanying the delivery. The bill was returned with a request to present it at the plaintiff's store. This request being complied with, the plaintiff sent the note of a third person, with a message that if the paper was not satisfactory he would call and pay the money. The note was not satisfactory. The plaintiff then promised to pay the bill before a certain hour, which he failed to do. After two days from the delivery of the furniture, the clerk and the carman of the party who had owned the same, called at the plaintiff's house with a drawer belonging to a bureau, one of the articles sold, and obtained admittance by stating that they wished to replace the drawer, which had been returned to the store by the plaintiff to be fitted more perfectly. They did replace the drawer, but having waited, at a servant's request, for the return of the plaintiff or his wife, they stated that the furniture was not paid for, and that they must remove it, which they proceeded to do. They took the articles with rapidity and some carelessness.

Within a short time, the plaintiff called at the store, paid the bill, and took the furniture away. He then sued the de-

fendants for trespass, charging the act upon the clerk and car-man, and alleging that the other defendant instigated and employed them to commit the wrong. The latter averment was not denied in the answer.

The cause was tried before a jury, who found a verdict in favor of the plaintiff for $50. From a judgment thereon the defendants appealed.

Other facts relating to the points decided, are sufficiently indicated in the opinion.

*Hiram P. Hastings*, for the defendants.

*William H. Stogdill* and *Henry L. Clinton*, for the plaintiff.

BY THE COURT. WOODRUFF, J.—Notwithstanding the broad language used in the cases of *Palmer* v. *Hand*, 13 J. R. 434; *Haggerty* v. *Palmer*, 6 John. Ch. R. 437; and *Keeler* v. *Field*, 1 Paige, 312, I apprehend that where a vendor voluntarily delivers goods, without any reservation, and designedly leaves them of his own free will in the vendee's exclusive possession for any period of time, longer or shorter, he waives simultaneous payment, and the title to the goods passes to the vendee, unless such delivery or waiver is procured by fraud.

In the present case, the goods were, as testified by one of the witnesses, sold for cash. They were taken to the plaintiff's house. A bill accompanied the goods; the vendor was there desired to send the bill to the plaintiff's store. Then was the time for the vendor to elect, either to retain the goods until paid for, or to make the delivery conditional by express arrangement to that effect; or to deliver the goods without condition, and rely upon the good faith and credit of the vendee.

He chose the latter, and for two days the goods were voluntarily permitted to be in the exclusive possession of the vendee, and his control over them was in no manner qualified by an express reservation or condition. This was, in my judgment, a clear waiver of the vendor's undoubted right to insist upon pay-

ment on the delivery, as a condition of parting with his title. And this view I deem in full accordance with the reasoning of the court and with the decisions in *Russell* v. *Minor*, 22 Wend. 670; *Lupin* v. *Marie*, 6 Wend. 80; *Chapman* v. *Lathrop*, 6 Cow. 114.

No doubt there may be cases in which, *ex necessitate*, some confidence must be reposed in the vendee; as where the goods sold are of great bulk or large in quantity, in such wise that the delivery is necessarily at different times, or occupies a considerable period in its progress, in which cases the vendor would not be bound to insist upon payment before the whole bulk or quantity was delivered or tendered. But even in such case, if he voluntarily leaves the property in the uncontrolled possession of the vendee, after the delivery is complete, the title vests. And especially this will be true if, on requesting payment, he is put off to another occasion, and acquiesces in the postponement.

The case of *Van Neste*, &c. v. *Conover*, 5 How. Pr. Rep. 148, was of the description last named: it was a sale of corn, which was to be delivered from canal boats on board of a ship bound for London, and it was three days in delivery. From the nature of the case it was not till the last of the corn was placed on ship board that payment could be required.

The change of title, then, in the present case, was very properly made to depend on the question whether there was or was not fraud in the vendee; and there could not, upon the evidence, be any pretence of fraud on his part, unless it consisted in a premeditated design not to pay for the goods, to be inferred from the neglect to pay on delivery, and the subsequent delay of payment, under all the circumstances. The charge left this question to the jury in the fullest manner, and their finding repels all idea of fraud in the vendee. In my judgment, their finding was not against the weight of evidence. There is no evidence that the plaintiff made use of any artifice to obtain possession of the goods, or made any representation on the subject; nor that he made any promises in regard to the payment. And, except only in the single sentence coming

from the defendant's clerk, that he did sell the goods for cash, there is no evidence that any thing whatever passed between the parties at the time of the sale in regard to the precise time or place of payment. The subsequent acts of the defendant appear to me to manifest an honest desire and intention to pay for the goods, and I can hardly doubt that they would have been paid for, whether the defendant had violently retaken the goods or not.

If, then, the vendor had parted with the title, the defendant had no right to take the goods from the plaintiff's house, and in doing so they were trespassers, whether they had license to enter his door or not.

Even if I could concede that the title to the goods remained in the vendor, I should much incline to the opinion that the artifice resorted to by the defendant to obtain admission to the plaintiff's house, in studied concealment of the real purpose of the visit, was such a fraud as rendered the mere admission by the servant no protection. They deceived her, and by such deceit obtained from her a consent to enter and place a drawer in the table—not a license to bring in a carman and carry off furniture left in her custody in the absence of her master and mistress.

As to the liability of the defendant, Humphreys, it appears to me that there was no evidence whatever to be submitted to the jury, showing or tending to show that he either instigated, authorized, ratified or adopted the acts of the other defendants. It was not even proved that the transaction came to his knowledge prior to the commencement of this action. Nevertheless, I do not think the defendant can complain of the charge, in this respect. If it was erroneous, the error was in his favor, for, in my judgment, the jury might properly have been instructed that his answer admitted his participation in the trespass, so as to make him equally liable with the others. The complaint avers that the trespass complained of was done by the other defendants at the instigation and request of Humphreys, and that he employed them for that purpose. This is not denied, and, therefore, *if not an immaterial allegation, it is*

*admitted.* I need hardly say, that so far from its being immaterial, it is, if true, conclusive against him.

It is urged that now, as formerly, facts are to be alleged " according to their legal effect," (*Dollner* v. *Gibson*, 3 Code Rep. 153,) and, therefore, that the complaint should have stated that Humphreys "entered,&c., and took and carried away, &c.;" and that the pleader has now only stated *evidence* of such acts. Whether the rule of pleading be or be not as stated, it by no means follows that when the *very facts*, and *all* the facts, which it is necessary for the plaintiff to *prove* to entitle him to the judgment prayed for, are stated in the complaint, and are either admitted or proved, the plaintiff may not demand judgment thereon, whether the legal effect of those facts is alleged or not.

Besides, I am not prepared to concede that in this case an allegation that " Humphreys entered the plaintiff's house, and took and carried away the plaintiff's goods," when, in fact, he did not visit the premises at all, would have been a better compliance with that rule of pleading (§ 142, subdiv. 2) which directs " a statement of the facts constituting the cause of action, in ordinary concise language, in such a manner as to enable a *person* of common understanding to *know what is intended*," than an allegation averring what *was true,* or so conceded, and *all* that was true, viz., that the defendant, Humphreys, instigated, requested and employed the other defendants to do the acts complained of.

The remaining ground upon which a new trial is sought, is that the judge on the trial erred in his charge on the subject of damages, namely, in instructing the jury that " if they found that the defendants had no just cause to take the goods, then that they were liable for such damages as the jury thought proper to give under the circumstances." I agree fully with the judge before whom this motion was made, at special term, that the actual amount of *pecuniary loss* to the plaintiff is not necessarily the rule of damages in cases like the present.

Even if the plaintiff be confined strictly to compensation for the injury sustained by him, the jury are to determine the ex-

tent of the injury and the equivalent damages, in view of all the circumstances, of *injury, insult, invasion of the privacy*, and *interference with the comfort* of the plaintiff and his family. If this was all that the charge fairly imported, the verdict ought not to be disturbed. But the language of the charge goes further, and leaves the amount of damages to the jury, without *any* guide whatever, except an undefined sense of "propriety." I can hardly doubt that if the charge had been spread upon the case *in extenso*, there would be found rules for the guidance of the jury in their judgment, which would have relieved the case from the loose and vague discretion the jury now appear to have exercised. But we can here only determine the matter upon the case as submitted; and as the charge reads, it left the jury to give such vindictive damages as they thought proper, without any regard to the question whether the trespass was willful or not; and even although it was the result of an honest belief in the minds of the defendants that they had a right to do all that they did, and though they acted without any intention to wrong or injure the plaintiff in any respect.

The rule in actions for trespass of this description will not, I think, allow of the recovery of what are termed "vindictive" or "exemplary damages," unless the trespass is wanton or willful, or attended by circumstances showing the influence of bad motives in the act complained of, and I think that the jury should have been instructed in view of this distinction.

For an involuntary trespass, or a trespass committed under an honest mistake, without intent to injure, the damages should be confined strictly to compensation for the injury sustained by the plaintiff, and in estimating the amount of such damages, all the particulars wherein the plaintiff is aggrieved may be considered, whether of pecuniary loss, or pain, or insult, or inconvenience.

For a willful trespass, or a trespass committed in reckless or wanton disregard of another's rights, or accompanied by circumstances of cruelty or oppression, or other particulars showing the presence of malice or a corrupt motive, the jury

may and ought not only to give such compensation as above named, but also further damages in view of the aggravated character which the trespass then assumes, usually called " smart money," or " exemplary damages." (See *Tillotson* v. *Cheetham*, 3 John. R. 56 ; *Hoyt* v. *Gelston*, 13 John. R. 141, 561 ; *Woert* v. *Jenkins*, 14 John. R. 352 ; *Brizee* v. *Maybie*, 21 Wend. R. 145 ; *Tifft* v. *Culver*, 3 Hill, 180 ; *Jay* v. *Almy*, 1 Woodbury & Minot, 262 ; 1 Barr, 107, cited by defendant's counsel ; *Amor* v. *Longsbeth*, 10 Barr, 145, and cases ; 17 Pick. 284 and 459 ; 19 Maine, 361, cited by defendant's counsel.)

In some of these cases the rule of damages was *fixed* and *certain*, viz., the value of the property and interest thereon. But the principles of the cases will, I think, be found to sustain the distinction I have taken. The damages found by the jury are not excessive. I cannot perceive that any injustice has been done, and I am very reluctant to interfere with the verdict ; nevertheless, as the jury may have acted under an erroneous view of the rule by which they should be governed, the defendant is in strictness entitled to a new trial, costs to abide the event, unless the plaintiff will consent to reduce the verdict to nominal damages.

Ordered accordingly.