## Van Neste *vs.* Conover.

In an action to recover the possession of a quantity of corn, purchased by the defendant for cash, and delivered to him on the promise of immediate payment, it appeared that the defendant assured the vendor's agent that the money to pay for the corn was arranged for, and that the vendor could have it as soon as the corn was delivered on board a ship; and upon that condition the corn was delivered to the defendant, who, on various pretexts avoided the payment of the money, for several days, and the vessel sailed for Europe, with the corn on board; the defendant on the same day she sailed, executing a general assignment of his property to trustees for the benefit of his creditors, he being insolvent at that time and at the time of the purchase, and having obtained advances upon the bills of lading, and applied them to other purposes. *It was held* that both on the ground of fraud, and of a conditional sale and delivery, the plaintiff was entitled to recover; and a verdict in favor of the defendant was set aside, as being against the weight of evidence, and a new trial was granted.

Such an action will lie, although the goods have been transferred to another, as security for a debt, and are on board ships and not under the manual control of the purchaser when the action is brought. The judgment being in the alternative, for the return of the property or the payment of its value, the defendant, if he has not the property, can satisfy the other requirement of the judgment, and pay the value.

APPEAL by the defendant from an order made at a special term, granting a new trial. The action was brought to recover of the defendant the possession of 6261 bushels and 14 pounds of corn, of the value of $3443.69, and the damages and expenses incurred by the wrongful detention thereof. The jury

found a verdict for the defendant. The following opinion was delivered at the special term :

Roosevelt, J. " This suit is brought to enforce the restitution of a large quantity of corn, six thousand bushels and upwards, purchased by the defendant for cash, but never paid for. It appears that, although giving assurances of payment on delivery, and representing that he had made arrangements for that purpose, he was at the time utterly insolvent, and if the purposes of his mind are to be judged of by his acts, had no intention of paying at all.

The suggestion that the bad news received by him from Europe on the 6th of April, was the cause of his stoppage, is refuted by dates. How could letters, the contents of which were unknown till the 6th, have influenced the non-payment on the 2d, 3d, 4th and 5th ? It is not usual for effects to precede their causes. He admits, as I read his answer, that he was to pay on delivery; but allowing, as he now contends, that by *cash* was meant payment in two or three days, even in that view, the delivery having been completed on the 2d, he had failed before the 6th. Nothing had occurred, or is pretended to have occurred, between the time of purchase and the time of payment, to create or to warrant a change of intention. The inference, therefore, is irresistible, that in the very act of buying *he deliberately purposed not to pay.* It has been held, and very justly, that such a purpose, entertained at the time, and carried into effect, is a fraud on the vendor, and vitiates the contract of sale. (1 *Hill*, 311. 13 *Wend.* 507.)

The defendant's counsel contends, that, to avoid a sale on the ground of fraud, or false pretenses, there must be misrepresentation, not of a promissory character, having reference to the future, but an existing fact ; and that assuming that his client, when negotiating the purchase, did say that he had " made arrangements to pay the money as soon as the corn should be weighed on ship-board," the statement in that particular, as a matter of fact, was true. But when a party not only promises to do a thing which he is able to do, but accompanies

Van Neste *v.* Conover.

his promise with an assurance that he *intends* to do it, when in truth he intends the very opposite, is not this a false representation of an existing fact? Are there no facts except those existing in the physical world? Are mind, and the creations of mind, nothing? There is high authority for the doctrine that words are things; and if words, why not the mental conceptions, of which words are the mere clothing? Intention, like other hidden works of the intellect, may sometimes be difficult of proof; yet it is none the less a fact, an existing fact; and the law, in spite of all its difficulties, has made the judicial determination, not of questions of property merely, but of liberty, and even of life, to depend upon this kind of fact. Intention, not unfrequently, is the only distinction between a breach of trust and larceny; and, in the trial of life and death, it constitutes the broad boundary between murder and manslaughter. Its existence or non-existence, therefore, in contemplation of law, can be proved like any other fact.

In the present case, as already stated, I consider the fact of the intention not to pay, as abundantly established. The defendant made the purchase on the afternoon of the 29th of March, being utterly insolvent at that time. He made immediate arrangements with third parties to obtain advances on the corn. On the 1st of April, before the whole quantity had been fully delivered on board the ship, and while the lighters were still alongside, he hurried to the ship-owners and procured the bills of lading. These he forthwith transferred to the parties making the advances, who on the 2d forwarded them by the steamer to Liverpool. Having thus put himself in funds, by creating a lien on the property purchased, what did he do with those funds? On the afternoon of Tuesday, the 2d of April, the measurer's return was sent to him, but the clerk "brought back no money." "I saw the defendant (says the witness) the next day; I think twice; I asked him for payment; I wanted the money; he put me off, saying it was steamer day; I saw him again; he told me that his parties, whom he was to have the money from, (he had the money in his pocket,) were so much engaged that they had not time to give him the money, but I might rely

on it early next morning; the next morning between 9 and 10 o'clock, I sent another clerk; he went and returned and said Conover was not in; I started immediately myself; again he was not in; he did not come; I made an arrangement to meet him on 'Change; he did not come till late, near 3 o'clock; I immediately asked him for the money; he said (with the money, be it remembered, in his pocket) he was ashamed to say that his party had disappointed him, but that I might rely upon it before 10 o'clock next morning; I went again next morning to his office; he then told me his father-in-law was dead, but his book-keeper would bring me the money during the day; this was on Friday, the 5th; I saw the book-keeper on 'Change where he was to bring the money; I did not get it; I went to defendant's place of business again next morning; did not see him, but the book-keeper said he would not or could not do any thing about it." This was on Saturday. On the Monday following, the ship, with the corn on board, being two days behind her time, sailed for Liverpool, and the defendant, at the same time, executed an assignment of all his estate, real and personal, of what nature or kind soever, for the benefit of his friends and relatives and other preferred creditors. With such a narrative of pretenses and prevarications, can there be a reasonable doubt that when he purchased, he had no intention to pay? I lay no stress on the letters received by him on the 6th, as it is palpable that they had no influence on his previous conduct on the 1st, 2d, 3d, 4th and 5th.

In addition to the ground of fraud, the plaintiff insists, (and I see no incompatibility in his doing so,) that the sale made by him was conditional; that no title to the corn was to pass unless paid for in cash on delivery, and that this condition—deemed essential to the contract, it being addmitted by the defendant himself that the purchase was not on credit—was not waived by merely putting the corn on board the ship.

The proof, it seems to me, makes out this branch also of the plaintiff's case. Indeed, the defendant, in his answer, which moreover is under oath, uses language sufficiently strong, to dispense with other testimony. "As the sale (he says) was for cash,

this defendant probably did say, *that he would pay for the corn on its delivery*, he at the same time fully expecting to be able and intending to make such payment." Was this condition waived by a delivery without immediate payment, or by any other act or declaration of the plaintiff? An article like corn, requiring to be measured or weighed out, it is obvious, could not be delivered all at once. The passing of each successive bushel into the hold of the vessel could not constitute a delivery of the whole or even of that particular bushel. Although sold for cash, no payment was demandable until possession had been given of the entire quantity sold. If mere change of possession, then, in such a case, does not make out an absolute delivery, we must inquire what further was necessary.

Long acquiescence has sometimes been considered sufficient. But here, instead of acquiescing, the seller, as soon as the measurer's returns were ready, demanded his pay ; or in other words, insisted on the fulfilment of the condition of cash on delivery. He continued his demands daily, and was daily evaded, until the ship and the corn had passed beyond his reach—all in less than one week. In all this I see no evidence of waiver, but the reverse. And had the corn remained in the defendant's hands, and not been pledged to a *bona fide* lender, the verdict of the jury, I doubt not, would have restored it to the plaintiff. Can, then, the wrongful hypothecation, superadded to the fraudulent purchase and broken condition, improve the wrongdoer's case?

It is said that an action to recover the possession of specific personal property, against a party not having the control of it, involves an absurdity. If so, the old common law, so long considered 'the perfection of reason,' was guilty of folly ; for certainly replevin could formerly have been maintained in such a case, as is sufficiently demonstrated by the antique writ of *capias in withernam*. But independently of authority, I see no absurdity in the nature of the proceeding. Suppose a judgment, in this very case, to be recovered against the defendant, for the specific corn described in the complaint, where is the difficulty in executing it? The defendant has only to dis-

charge the lien created by himself, and reclaim the possession from the party who made the advances—or purchase a like quantity of the article of the same quality—or provide himself with a sum of money equivalent in value, and the difficulty would disappear. At all events, he cannot be permitted to set up inconveniences, if any exist, created by his own wrong, as a defense to an action, otherwise clearly maintainable.

With respect to the assignment of the 8th of April, it did not profess to pass any property of which the assignor was not the just and lawful owner; and if it had, its only consideration being the security or payment of the antecedent debt, the assignees would acquire no title under it, as against the equitable claims of third parties. The consignees who made the previous *bona fide* advances, I have considered as standing upon a different footing; although, according to the doctrine laid down by the supreme court, in the case of *Andrews* v. *Dieterich*, (14 *Wend.* 31,) even they would seem to have no rights sufficient to defeat the title of the original owner. But not being parties to this suit, it is unnecessary, and would perhaps be improper, to express a decided opinion with respect to their claims.

As the verdict, in my view of the whole case as above stated, appears to be clearly against right, I have concluded that it ought to be set aside and a new trial had, leaving the question of costs to abide the event."

*C. O'Conor*, for the appellant. I. The form of the plaintiff's remedy was misconceived. The property having been, in good faith and in due course of business, shipped to Europe, and being, at the commencement of the action, actually out of the possession or power of the defendant, and beyond the jurisdiction of the court, the plaintiff cannot recover. (1.) To maintain the action it is not enough that the defendant should be responsible as in *tort* for an unauthorized conversion of the plaintiff's property. Replevin is not, to all intents, a concurrent remedy with trespass or trover. If, at the time of the action brought, the plaintiff has not an actual subsisting right to the possession of the property, he cannot recover. (2.) If the property had not

Van Neste v. Conover.

been removed the sheriff could not have taken it; for the pledgees held it by a paramount title. (*Mowrey* v. *Walsh*, 8 *Cowen*, 238. *Root* v. *French*, 13 *Wend*. 570. *Andrew* v. *Dieterich*, 14 *id*. 31.) (3.) The intense severity of the remedial processes allowed to the plaintiff in this action, can only be justified on the assumption that the defendant still has power over the property and could surrender it to the sheriff; but, perversely, and in contempt of the process of the court, willfully detains it. (*Van Neste* v. *Conover*, 8 *Barb*. 509; *S. C.* 5 *How. Pr. Rep.* 148.)

II. Neither the sale nor the delivery was conditional. (1.) Every sale is in judgment of law a sale for cash, unless accompanied by an express stipulation for a *specified term* of credit. The mere *absence* of such express stipulation works precisely the same effect as the *presence* of an express promise *fairly* made to pay cash on demand. (2.) When a delivery is duly made in reliance upon the promise to pay on demand, and the purchaser has, in good faith, acted upon it, and disposed of the property by sale, pledge or other irrevocable appropriation, the law will not allow the seller to repent of his confidence and rescind the sale; thereby turning what was a bona fide *contract* into a *tort*, robbing a third person of his honestly acquired title, and subjecting to strict incarceration, as a malefactor, the unfortunate trader who, without guile or malpractice, has been overtaken by misfortune, and deprived of the ability to fulfill his promise. (*Smith* v. *Lynes*, 1 *Selden*, 41.) (3.) In all the cases in which a perfected delivery upon a cash sale has been adjudged rescindable, there has been proved some trick or artifice working a surprise upon the vendor. Whenever the contract is honestly made, and the intention to pay is not disproved, and the delivery is voluntarily and understandingly made by the vendor in the usual course, relying merely upon the promise to pay, the property passes. (*Chapman* v. *Lathrop*, 6 *Cowen*, 110. *Lupin* v. *Marie*, 2 *Paige*, 169; *S. C.* 6 *Wend*. 77. *See review of the leading cases in Smith* v. *Lynes*, 3 *Sandf. S. C. R.* 209.)

III. The case, fairly viewed, affords no evidence of an intent not to pay, which is the only fraud that could be pretended.

---

Van Neste v. Conover.

---

Every circumstance brought forward to excite suspicion is fairly met, and every inference of guile on the part of the defendant satisfactorily repelled. The learned justice at special 'term misapprehended the facts. (*Gallager* v. *Brunel*, 6 *Cowen*, 346. 18 *Wend*. 609. 1 *Rawle*, 315. 6 *Harr*. & *John*. 256, 426. 9 *Watts*, 572. *Alston* v. *Mech. Mu. Ins. Co.*, 4 *Hill*, 342.)

IV. This is an excessively *hard action*. The plaintiff had a fair trial on all the evidence; the charge was so favorable to him that he took no exception. To award a new trial in such a case, is contrary to the settled practice of the courts, and amounts to the violation of a fundamental maxim. In these cases *quasi* criminal *nemo debet bis vexari pro eadem causa*. (*People* v. *Superior Court*, 5 *Wend*. 114; *S. C.* 10 *id*. 289.)

*Wm. Curtis Noyes*, for the plaintiff. I. The defendant's answer admits the sale of the corn to have been for *cash on delivery;* and the mode of delivery, demand of payment, and the time thereof proven on the part of the plaintiff not having been contradicted by the defendant, it is a question of law whether the delivery was of such a nature as to pass the title, and it should have been, and should be passed upon by the court as such. (*Hill* v. *Hobert*, 4 *Shep*. 164. *Van Neste* v. *Conover*, 4 *How. Pr. Rep*. 149. 8 *Barb*. 509.)

II. Where an article like grain is sold to be paid for on delivery, in such quantities that it cannot all be conveyed at once to the place of delivery, the delivery is not complete, nor does the title pass until the whole quantity has been delivered, and the amount ascertained and paid for, unless after the ascertainment of the amount, credit for the price is given, or the condition as to the payment waived in some other way. (*Chit. on Cont*. 392, notes. *Story on Sales*, § 313. *Andrews* v. *Dieterich*, 14 *Wend*. 31. *Ward* v. *Shaw*, 7 *id*. 404. *Strong* v. *Taylor*, 2 *Hill*, 326. *Rapelye* v. *Mackie*, 6 *Cowen*, 253. *Lawrence* v. *Williams*, 4 *Camp*. 181. *Whitwell* v. *Vincent*, 4 *Pick*. 449. *Leven* v. *Smith*, 1 *Denio*, 571. *Lucy* v. *Bundy*, 9 *N. Hamp. R*. 208. *Hill* v. *Freeman*, 2 *Cushing*, 257. *Tyler* v. *Same*, 2 *id*. 261.)

Van Neste v. Conover.

III. A delivery of personal property, to pass the title, means something more than the passing of an article from one to another; it must be a delivery absolute in its nature, and with the intention to pass the title, leaving nothing to be done by the party to whom delivered to make his right to retain perfect. (*Leven* v. *Smith,* 1 *Denio,* 571. *Whitwell* v. *Vincent,* 4 *Pick.* 449, *and cases cited above.*)

IV. The letters offered by the defendant were improperly admitted in evidence. They were not evidence against us for any purpose. (*Maesters* v. *Abrams,* 1 *Esp. N. P. R.* 375; *S. C.* 10 *Ves.* 127. *Kahl* v. *Jansen,* 4 *Taunt.* 566. *Langhorn* v. *Allmet, Id.* 511. *Keyner* v. *Pearson, Id.* 663. *Towle* v. *Stevenson,* 1 *John. Cas.* 110.)

V. The judge should have instructed the jury that as the evidence of the plaintiff was undisputed as to the terms of sale, and that it was a conditional one, and as to the presentation of the bills, as soon as the amount had been ascertained, there was no question that a delivery had not taken place, the corn not having been paid for in pursuance of the condition. (*Van Neste* v. *Conover,* 4 *Howard's Pr. Rep.* 149. *Hill* v. *Hobert,* 4 *Shep.* 164. *Hill* v. *Freeman,* 3 *Cushing,* 257.)

VI. The verdict was contrary to evidence; for the evidence proved, (1.) That the terms of the contract were never waived; that no credit was given; and that the sale and delivery were only conditional. (*Graham on New Trials,* 361, 2, 5. *Jackson* v. *Parker,* 9 *Cowen,* 73. *Story on Sales,* § 313. 2 *Kent's Com.* 497, 8. *De Wolf* v. *Babbet,* 4 *Mason,* 294.) (2.) That the defendant, having got the corn on board the ship, fraudulently appropriated it by getting bills of lading, and procuring advances upon them. (3.) Upon these facts there was no contrariety of evidence, nor any dispute whatever, and the jury either forgot or disregarded the testimony, and gave a verdict contrary to law and evidence.

VII. No formal exceptions to the charge were necessary on the trial to bring up the questions of law now presented; the case alone is enough. (*Code,* § 264. *Archer* v. *Hubbell,* 4 *Wend.* 514.)

VIII. Judgment should have been ordered for the plaintiff on the pleadings and evidence; and as the verdict has been set aside, and a new trial granted, the order to that effect should be affirmed, with costs.

*By the Court,* MITCHELL, P. J.   This appeal is from an order of the special term, granting a new trial, on the ground that the verdict was against the weight of evidence.   The court does not, generally, interfere with the verdict of a jury, unless it is clearly against the weight of evidence.   If any case should be an exception this ought to be, as the case was presented to the special term, and to the general term, on former occasions, on affidavits exhibiting substantially the same state of facts as appeared at the trial; and both tribunals considered a case of fraud or of conditional sale, made out, and in that conclusion the judge whose order is now appealed from concurs.

The facts are such that they should be again submitted to a jury.   The defendant obtained all his means which he had in business, by advances; and when he commenced his winter or spring dealing in flour and corn, in February, 1850, he owed $4000 or $5000 which he had contracted in the preceding summer, and which was still due, at the trial.   Between Feb. 1850, and his failure in April of that year, his purchases amounted to $245,000.   He bought the plaintiff's corn of Mr. Melick on the 29th of March of that year.   Melick stated to him that he wanted to sell to some one who could give the cash as soon as the corn was out of the barges; and expressed his doubt whether the defendant could so pay, and reminded him that he had been buying largely, during the winter and spring.   The defendant replied that he had paid for those purchases; that he did not depend on his own resources to pay for the corn; that he had arrangements with other parties for the pay, and although he was buying a large amount of corn to send abroad, yet he only occasionally took a little interest for himself in the purchases; and that he had arrangements made with a party, then, for the pay for the corn; that he could give the money for the corn just as soon as it was all on board the ship.   Melick finally told him

that if he could assure him that he had the money arranged for, so that he could pay for the corn when it was in the ship, he would send it alongside the ship. And the defendant assured Melick that the money was so arranged for, and that he could have the money as soon as the corn was all on board the ship, and on that condition Melick agreed to deliver the corn. The corn was all delivered on the 2d of April, and a bill sent to the defendant's store on the same day, for the money. On the 3d he was personally seen and payment demanded, and he said it was steamer day and *his parties* were very busy getting off their letters, and he could not get the check until after the steamer sailed; that Melick might rely on it early next morning. The next day came, and he said he was ashamed to say that *his party* had disappointed him, but that Melick might rely on the money before 10 A. M. the next day. Again, on April 5, the defendant made an excuse on account of the death of his father-in-law, and promised that the money should be paid during the day. It was not paid on that day, and his book-keeper gave assurances that it should be paid the next day. The next day, or the business day after, he failed. In the mean time he had obtained advances on this corn, and applied them to other purposes. The conduct of the defendant subsequent to the sale, was evidence of the motive which influenced him to make the purchase, and looks so much like a design to deceive and mislead, that it should be again submitted to a jury. If his representations are to be understood, (as it is insisted the cross-examination shows they should be,) as stating only that he had made arrangements that advances should be made on his corn generally, and such arrangements were in fact made, and he intended when he purchased the corn to pay for it, the imputation of fraud may be effectually repelled. If he meant, as the direct examination strongly tends to show, and his subsequent remarks confirm, that he made the purchases for other persons, who were to pay for the corn, and there is no proof that this was true, then the charge of misrepresentation is made out.

The evidence also shows a sale and delivery conditional on the payment of cash. There is no evidence to contradict this.

Van Neste v. Conover.

Yet the jury finds against it.   If another jury shall infer from any circumstances that the delivery was intended to be a waiver of this condition, and there should be such circumstances as would justify such an inference, it may be conclusive.   At present, such circumstances do not appear.   If the delivery on board a foreign ship were alone proof of a waiver of the condition, then there could be no sale for cash, of corn to go abroad, without the payment being made before the delivery.

The question was raised, but not discussed, whether this action would lie, as the goods had been transferred as security to another, and were on board ship, and not under the manual control of the defendant when the action was brought.   When this case was before the general term the first time, (8 *Barb.* 509,) it was held the action lay.   And that was the main question then discussed, although the motion was to discharge the defendant from bail.   Afterwards, in *Merrick* v. *Suydam*, (1 *Code Rep. N. S.* 212,) a further question was argued, whether the peculiar bail for the return of the property or the payment of the debt, can be allowed in these actions, even when the action lies, if the property, before suit brought, has passed from the defendant's hands and control without any intention to evade the process of the court.   And it was held that it could not be allowed, as the plaintiff, to obtain such bail, must make an affidavit alleging, in the present tense, that the defendant *is* in the possession of the property; but the court still held that the *action* would lie.   It may well lie ; as the judgment must be in the alternative, for the return of the property or the payment of its value; and thus the defendant can, if he has not the property, satisfy the other requirement of the judgment, and pay the value.

The order granting a new trial is affirmed, with costs.

[NEW YORK GENERAL TERM, September 3, 1855.   *Mitchell, Roosevelt* and *Morris,* Justices.]